UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

MICHAEL LYNN FORD                                                    PLAINTIFF

V.                                          CIVIL ACTION NO. 3:23-CV-504-DPJ-ASH

COMMISSIONER OF SOCIAL SECURITY                                     DEFENDANT

REPORT AND RECOMMENDATION

Michael Lynn Ford filed a claim for disability insurance benefits on January 19, 2021,

alleging disability beginning May 10, 2016. After the Social Security Administration initially

and upon reconsideration denied his application, Ford requested and was granted a hearing

before an administrative law judge. On November 23, 2022, the ALJ issued a decision finding

that Ford is not disabled. The Appeals Council denied review, and on August 3, 2023, Ford filed

this appeal under 42 U.S.C. § 405(g). As explained below, the undersigned recommends that the

Commissioner's decision be reversed and this case remanded to the Social Security

Administration for further proceedings because the ALJ's residual-functional-capacity analysis

failed to assess the effect of Ford's mild limitation in the area of interacting with others.

I.       Facts and Procedural History

Ford was 55 years old at the time of his alleged disability onset. He completed a

bachelor's and a master's degree in business administration and has past relevant work

experience as an investment analyst. In April 2016, while attending a concert, Ford fell and hit

his head, suffering a traumatic brain injury (TBI) that ultimately led to neurocognitive issues,

total hearing loss in the right ear, and ongoing tinnitus in the left ear.

The ALJ evaluated Ford's claim using the familiar sequential evaluation process for determining disability.[1] At step two, she found that Ford has the following severe impairments: TBI, hearing loss, neurocognitive disorder, depression, anxiety, and alcohol abuse. R. Vol. 1 [7] at 21.[2] At step three, the ALJ concluded that Ford did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 22.[3] She found Ford had the residual functional capacity to perform a range of medium work with the following limitations:

---

[1] Disability is defined by statute as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In evaluating a disability claim, the ALJ engages in a five-step sequential process, making the following determinations: (1) whether the claimant is presently engaging in substantial gainful activity (if so, a finding of "not disabled" is made); (2) whether the claimant has a severe impairment (if not, a finding of "not disabled" is made); (3) whether the impairment is listed, or equivalent to an impairment listed, in 20 C.F.R. Part 404, Subpart P, Appendix 1 (if so, then the claimant is found to be disabled); (4) whether the impairment prevents the claimant from doing past relevant work (if not, the claimant is found to be not disabled); and (5) whether the impairment prevents the claimant from performing any other substantial gainful activity (if so, the claimant is found to be disabled). *See* 20 C.F.R. §§ 404.1520; 416.920. The analysis ends at the point at which a finding of disability or non-disability is required. The claimant bears the burden to prove disability throughout the first four steps; if he sustains his burden through step four, the burden shifts to the Commissioner at step five. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

[2] All pinpoint citations are to the CM/ECF pagination.

[3] At step three of the sequential process, "[a] claimant bears the burden of establishing that every requirement of the relevant listing—generally referred to as 'paragraphs'—is met." *McGowan v. Saul*, No. 4:20-CV-282, 2021 WL 799325, at *3 (S.D. Tex. Jan. 6, 2021). Paragraph B of the listings for mental disorders

> provides the functional criteria [the ALJ] assess[es] . . . to evaluate how [a claimant's] mental disorder limits [his] functioning. These criteria represent the areas of mental functioning a person uses in a work setting. They are: Understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. . . . To satisfy the paragraph B criteria, [a claimant's] mental disorder must result in "extreme"

> [Ford] must never climb ropes, ladders, or scaffolds; [can] occasionally climb ramps and stars; and [can] frequently perform postural movements. He cannot work in an environment with industrial vibration. He cannot work at heights or with hazards. Mentally, the claimant can perform simple, repetitive tasks and make simple, work-related decisions. He also needs to work in an environment with moderate or less noise.

*Id.* at 23–24. The ALJ determined at step four that Ford cannot return to his past relevant work. *Id.* at 28. Relying on the testimony of a vocational expert, the ALJ concluded that Ford can perform the alternative jobs of cleaner II, hand packer, and industrial cleaner. *Id.* at 29. She therefore found that Ford is not disabled. *Id.*

On appeal, Ford says the ALJ's RFC is not supported by substantial evidence. He raises a few specific arguments under that umbrella: First, he says the ALJ's RFC finding failed to address his "decreased ability to focus, concentrate, make decisions, persist for a full workday, interact with others," and adapt to stress and change as well as "the effects of his hearing loss and tinnitus." Pl. Mem. [8] at 3. Next, he contends the ALJ's "analysis of the opinion evidence [wa]s patently defective." *Id.* at 11. Finally, he argues that her analysis of his "self-described limitations" was contrary to law. *Id.* at 17.

II.     Analysis

"On judicial review, the ALJ's determination that a claimant is not disabled will be upheld, if the findings of fact upon which it is based are supported by substantial evidence on the record as a whole, and if it was reached through the application of proper legal standards." *Loza v. Apfel*, 219 F.3d 378, 389 (5th Cir. 2000). Substantial evidence "is less than a preponderance of the evidence" and exists where the record contains "such relevant evidence as a reasonable mind

---

limitation of one, or "marked" limitation of two, of the four areas of mental functioning.

20 C.F.R. pt. 404, subpt. P, app. 1, 12.00A(2).

might accept as adequate to support a conclusion." *Schofield v. Saul*, 950 F.3d 315, 320 (5th Cir. 2020) (quoting *Consol. Edison of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). In reviewing a denial of disability benefits, the Court "does not reweigh the evidence in the record, try the issues *de novo*, or substitute its judgment for the [ALJ's], even if the evidence weighs against the [ALJ's] decision." *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000).

As noted, Ford's appeal focuses on the ALJ's RFC, which "is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." *Id.* "RFC is not the *least* an individual can do despite his or her limitations or restrictions, but the *most*." *Id.*

A.    Ford's Limitations and the ALJ's RFC

1.    Concentration, Persistence, and Pace

The ALJ concluded that Ford had a moderate limitation in the mental-functioning area of concentration, persistence, and pace.[4] A disability claimant with amoderate limitation in an area of mental functioning has a "fair" ability to function "in th[e] area independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. pt. 404, subpt. P, app. 1, 12.00F(2). Concentration, persistence, and pace "refers to 'the ability to sustain focused attention sufficiently long to permit the timely completion of tasks commonly found in work settings.'" *Boyd v. Apfel*, 239 F.3d 698, 702 n.6 (5th Cir. 2001) (quoting former 20 C.F.R. pt. 220, app. 1). It is the mental ability "to focus attention on work activities and stay on task at a sustained rate." 20 C.F.R. pt. 404, subpt. P, app. 1, 12.00E(3).

---

[4] Ford does not suggest this conclusion was not supported by substantial evidence.

> An RFC that accounts for moderate concentration, persistence, and pace limitations includes, for example: that Plaintiff "could maintain the concentration required to perform simple tasks, remember simple work-like procedures, and make simple work-related decisions," [could] "stay on-task and thereby meet production requirements," and "needed flexibility and work requirements that were goal-oriented." *Martin v. Saul*, 950 F.3d 369, 374 (7th Cir. 2020) (cleaned up). It could state that Plaintiff could "attend and concentrate for extended periods." *Herrera* [*v. Comm'r of Soc. Sec.*], 406 F. App'x [899,] 905 [(5th Cir. 2010)]; *Mary C.R. v. Kijakazi*, No. 3:20-CV-00286-BT, 2021 WL 4476764, at *6 (N.D. Tex. Sept. 30, 2021).

*Jacaman v. Comm'r of Soc. Sec.*, No. 5:21-CV-162, 2023 WL 3806390, at *8 (S.D. Tex. Mar. 31, 2023).

Here, the ALJ's RFC limited Ford to performing simple repetitive tasks and making simple work-related decisions. Those parameters adequately account for a moderate limitation in concentration, persistence, and pace. *See Westover v. Astrue*, No. 4:11-CV-816, 2012 WL 6553102, at *9 (N.D. Tex. Nov. 16, 2012) ("[T]he ALJ's RFC determination limiting Westover to only performing work that involved detailed instructions does not appear to be inherently contradictory with the ALJ's finding . . . that Westover was moderately limited in his ability to maintain concentration, persistence, or pace."); *Adams v. Astrue*, No. 07-1248, 2008 WL 2812835, at *4 (W.D. La. June 30, 2008) ("A limitation to simple, repetitive, routine tasks adequately captures deficiencies in concentration, persistence or pace." (collecting cases)); *cf. Bordelon v. Astrue*, 281 F. App'x 418, 423 (5th Cir. 2008) (finding hypothetical restricting claimant to "rare public interaction, low stress, and simple, one- to two-step instructions . . . reasonably incorporated [claimant's] moderate concentration, persistence, and pace limitations"). The ALJ's limitation of Ford to performing simple repetitive tasks and making simple work-related decisions is supported by substantial evidence.

2.     Adapting or Managing Himself

Ford suggests that the ALJ's RFC should have included some additional limitation related to his ability to adapt or manage himself. *See* Pl. Mem. [8] at 4–6. The adapting-or-managing-oneself area of mental functioning "refers to the abilities to regulate emotions, control behavior, and maintain well-being in a work setting." 20 C.F.R. pt. 404, subpt. P, app. 1, 12.00E(4). The ALJ concluded that Ford had only a mild limitation in his ability to adapt or manage himself. A mild limitation in an area of mental functioning indicates a claimant's functioning in the area "independently, appropriately, effectively, and on a sustained basis is slightly limited." 20 C.F.R. pt. 404, subpt. P, app. 1, 12.00F(2).

In finding a mild limitation in this area, the ALJ noted that a February 12, 2021 Function Report Ford completed stated he does not handle stress well and does not handle changes in routine "as well as [he] used to." R. Vol. 1 [7] at 198.[5] She contrasted these self-reported issues with evidence in the record that Ford can "regularly present for medical appointments, provide pertinent information regarding his medical history and associated symptoms, and adequately manage his medication regimen." *Id.* at 23.

The ALJ's conclusion that Ford suffered only a mild limitation in the area of adapting or managing himself is supported by substantial evidence. Relative to his depression and anxiety, Ford's neurologist, Dr. Michael N. Khoury, referred him to a psychiatrist in August 2016 and March 2017. R. Vol. 1 [7] at 276, 310. Records from Emory Clinic Psychiatric Department indicate that Ford was first seen there on June 20, 2017; Dr. Lobna A. Ibrahim "recommend[ed] continuing individual psychotherapy . . . to help develop better coping strategies to deal with . . .

---

[5] Ford completed the report after his December 31, 2020 date last insured. *See* R. Vol. 1 [7] at 19.

psychosocial stressors." *Id.* at 381. Dr. Ibrahim discussed various treatment options with Ford, who decided to "think about these options but . . . not take any medication for now." *Id.* Dr. Ibrahim saw Ford again on September 8, 2017; at that visit, she recorded that he had "started taking Wellbutrin XL 150mg . . . a couple of weeks ago because he was feeling depressed." *Id.* at 388. Ford reported that "the obsessive thoughts have decreased with it." *Id.* Dr. Ibrahim increased Ford's Wellbutrin prescription to 300mg and started him on "gabapentin 100mg . . . for anxiety" with a plan to increase the dose to 200mg in a week. *Id.* at 389.

At some point between then and August 2020, when Ford first saw Dr. Shonali Saha, he went back down to the 150mg dose of Wellbutrin and switched to Lexapro, 20mg, for anxiety. *See* R. Vol. 2 [7-1] at 906. Dr. Saha saw Ford seven times between August 2020 and his December 31, 2020 date last insured. The records from those visits show they focused largely on Ford's alcohol abuse; Ford remained compliant with his depression and anxiety medication and reported no major issues related to those impairments. *See id.* at 906–27.

The ALJ also considered mental residual functional capacity conclusions from medical consultants Drs. Koontz and Ronin. She found Dr. Koontz's report, which concluded Ford had a mild limitation in the adapting or managing area, more persuasive than Dr. Ronin's report, which rated Ford's limitation in that area at moderate. In particular, she acknowledged that "Dr. Ronin assessed moderate limitation in managing/adapting based on the claimant['s] ability to respond to changes in the work setting," but noted that "the evidence of record supports Dr. Koontz's assessment of mild limitation in the area of functioning, as the claimant has been able to flip houses during the relevant period." R. Vol. 1 [7] at 27 (citing R. Vol. 2 [7-1] at 906–27); *see* R. Vol. 2 [7-1] at 909 (noting on September 10, 2020, that Ford "[p]lans on flipping another house

soon"); *id.* at 919 (noting on October 23, 2020, that Ford is "[w]orking on getting a real estate

license"); *id.* at 922 (noting on November 19, 2020, that Ford "[s]old a house").

All of the foregoing constitutes substantial evidence supporting the ALJ's conclusion that

Ford suffered a mild limitation in the area of adapting or managing himself. And her RFC

articulation limiting him to performing simple, repetitive tasks and making simple, work-related

decisions captured that limitation. *See Miller v. Kijakazi*, No. 4:22-CV-3905, 2024 WL 1075485,

at *5–6 (S.D. Tex. Mar. 12, 2024) (finding RFC that limited claimant to "simple, routine tasks

and occasional interaction with supervisors, co-workers, and the public" captured claimant's

moderate limitation in adapting and managing himself).[6]

### 3.    Interacting with Others

The ALJ included no limitations related to Ford's ability to interact with others in her

RFC. In this area of mental functioning, she found Ford had a mild limitation, noting that he "has

never been fired or laid off due to difficulty getting along with others," "has . . . presented as

cooperative with normal mood and affect during examinations," and "goes out with others on a

regular basis." R. Vol. 1 [7] at 22.

---

[6] Ford says "the ALJ's RFC must address two *distinct* components when addressing how a
claimant handles work related stress; first, the amount of change the claimant can handle while in
the workplace and, second, how the claimant 'responds' to *any* change in the workplace." Pl.
Mem. [8] at 5–6. He cites the Program Operations Manual System, DI 34001.032, *available at*
https://secure.ssa.gov/poms.nsf/lnx/0434001032, and Social Security Ruling 13-2p, 2013 WL
621536 (Feb. 20, 2013)—entitled Evaluating Cases Involving Drug Addiction and Alcoholism—
for this proposition. But his citation to these sources is general, and he fails to point to anything
in particular to support his assertion. All the same, neither source supports the rule Ford
advances, and the undersigned has found no authority suggesting an RFC that does not address
"how the claimant 'responds' to *any* change in the workplace" demonstrates "clear harmful
error." Pl. Mem. [8] at 6.

An ALJ's assessment of a claimant's limitations in an area of mental functioning does "not necessarily translate to the language used at steps four and five." *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 209 (3d Cir. 2019).

> That said, "having assessed certain mental limitations at steps two and three, the ALJ is 'required either to include corresponding limitations in the RFC assessment *or* to explain the omission.'" *D.G. v. Kijakazi*, No. 21-CV-01655-NYW, 2022 WL 2666033, at *8 (D. Colo. July 11, 2022) ([quoting *Willie v. Saul*, No. 19-CV-329, 2020 WL 2065286, at *4 (D.N.M. Apr. 29, 2020)]). This is true even if the ALJ rates the mental impairment as mild. *Powell v. Kijakazi*, No. 21-CV-01160-JES, 2023 WL 2653358, at *4 (C.D. Ill. Mar. 27, 2023).

*Jose C. v. Kijakazi*, No. EP-23-CV-1, 2023 WL 8461640, at *7 (W.D. Tex. Dec. 5, 2023). Indeed, "[t]he ALJ's RFC analysis purports to be a more detailed analysis than the paragraph B determination at steps 2 and 3." *Martha L. v. Saul*, No. 1:20-CV-3-H-BU, 2021 WL 3610316, at *5 (N.D. Tex. July 27, 2021); *see* SSR 96-8p, 1996 WL 374184, at *4 (July 2, 1996) ("The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments . . . ."); 20 C.F.R. § 404.1545(c) ("A limited ability to carry out certain mental activities, such as limitations in . . . responding appropriately to supervision[ or] co-workers . . . may reduce your ability to do past work and other work.").

"Courts within this district have found no legal error where an ALJ does not include mental limitations in a claimant's RFC so long as the ALJ considered the limiting effects and restrictions of all impairments in the RFC analysis, even those impairments that are non-severe." *Martha L. v. Saul*, No. 1:20-CV-00003-H-BU, 2021 WL 3610316, at *5 (N.D. Tex. July 27, 2021). But the failure either to include or discuss a limitation *is* error. *Castillo v. Kijakazi*, 599 F. Supp. 3d 483, 489 (W.D. Tex. 2022) ("The error here is not the ALJ's failure to include mental

limitations in the residual-functional-capacity assessment. Rather, the error is the failure to consider whether mental functional limitations were warranted."). Thus, the "ALJ must explain '*why* he omitted *any* mental limitations from the residual-functional-capacity formulation.'" *Tommy L. v. Comm'r of Soc. Sec.*, No. 3:22-CV-2882, 2024 WL 734634, at *4 (N.D. Tex. Jan. 29, 2024) (quoting *Castillo v. Kijakazi*, 599 F. Supp. 3d 483, 489 (W.D. Tex. 2022)).

The Court finds the ALJ's RFC analysis did not assess the impact of Ford's mild limitation in the area of interacting with others. The ALJ considered Ford's depression and anxiety in her RFC analysis as follows:

> An intake appointment with Emory Clinic Psychiatric Department in June 2017 documents the claimant's history of depression, which was assessed as in partial remission during this appointment. Although the claimant endorsed periods of depression, he noted that his depressive symptoms had improved since he had been able to return to work after his traumatic brain injury (Exhibit 3F, page 2). The claimant also acknowledged improvement in his depressive symptoms with psychotropic medication (Exhibit 3F, page 2). However, he complained of anxiety due to money, conflicts in relationships, and work (Exhibit 3F, page 2). Despite reports of difficulty with memory and concentration, the claimant exhibited full orientation, normal speech, intact memory and concentration, and good judgment and insight (Exhibit 3F, pages 5–6, 12–13).
>
> The record does not reflect any additional mental health treatment until August 2020 when the claimant reportedly transferred to psychiatrist Shonali Saha, MD. However, it appears that the claimant's mental health issues at that time were more reflective of alcohol abuse, as he reported that he binge drank with a history of blackouts. He also reported cocaine use several times a year (Exhibit 13F, page 1). Despite his diagnoses of generalized anxiety disorder and mild, recurrent major depressive disorder, mental status examinations from this provider are generally normal (Exhibit 13F, pages 2, 4, 7, 11, 14, 17). Furthermore, the claimant admitted that he had been flipping houses (Exhibit 13F, pages 4, 17). He was also able to travel to see his daughter for Thanksgiving in November 2020 (Exhibit 13F, page 20).

Tr. Vol. 1 [7] at 26. No mention is made of the noted mild limitation in interacting with others. Similarly, the ALJ discussed the RFC conclusions reached by medical consultants Drs. Koontz

and Ronin—both of whom found Ford suffered a moderate limitation in interacting with others—but did not mention that area of mental functioning:

> The residual functional capacity conclusions reached by State Disability Determination Services medical consultants R. Koontz, PhD and R. Ronin, PhD are generally persuasive (Exhibits 1A and 4A). The undersigned notes that Dr. Ronin assessed moderate limitation in managing/adapting based on the claimant['s] ability to respond to changes in the work setting. However, the evidence of record supports Dr. Koontz's assessment of mild limitation in the area of functioning, as the claimant has been able to flip houses during the relevant period (see Exhibit 13F). This demonstrates his ability to adapt to a new career field. Hence, Dr. Koontz's opinion is more persuasive than Dr. Ronin's opinion.

*Id.* at 27. Simply put, having recognized some limitation in Ford's ability to interact with others at steps two and three, the ALJ's failure to explain why the RFC contains no corresponding limitation was at odds with Social Security Ruling 96-8p and therefore legal error.

But "[n]ot every error warrants reversal or remand." *Bornette v. Barnhart*, 466 F. Supp. 2d 811, 816 (E.D. Tex. 2006). "Reversal and remand for failure to comply with a *ruling* is appropriate only when a complainant affirmatively demonstrates ensuant *prejudice*." *Id.* (citing *Hall v. Schweiker*, 660 F.2d 116, 119 (5th Cir. 1981)). "A claimant establishes prejudice by showing that adherence to the ruling might have led to a different decision." *Id.* (citing *Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir. 2000)).

Because the ALJ failed to demonstrate whether she "adequately considered [Ford's mild] limitation" in interacting with others, the undersigned concludes that the RFC and the outcome of the administrative proceedings might have been different had the ALJ done so. *Tommy L.*, 2024 WL 734634, at *5 (quoting *Gonzales v. Berryhill*, No. 3:16-CV-1830, 2017 WL 3492215, at *6 (N.D. Tex. Aug. 15, 2017)). "The ALJ's RFC determination could 'have been different had [s]he considered the limitations that [Ford] faces [in social interaction.] This, in turn, could have affected the jobs available at step five of the sequential evaluation process, and [Ford] may have

been found disabled.'" *Id.* (quoting *Gonzales*, 2017 WL 3492215, at *6). The consequence of the ALJ's RFC analysis was to find Ford not disabled at step five—the step at which the Commissioner bears the burden. *See Leggett*, 67 F.3d at 564. This reinforces the Court's conclusion that the ALJ's error was harmful. *See Young v. Barnhart*, 362 F.3d 995, 1004–05 (7th Cir. 2004) (concluding that where ALJ at step five relied on VE's response to hypothetical question based on RFC that failed to account for all claimant's medical limitations, "the decision of the ALJ that [the] claimant can adjust to other work in the economy cannot stand"); *cf. Price v. Astrue*, 401 F. App'x 985, 986 (5th Cir. 2010) (explaining that ALJ "must build an accurate and logical bridge between the evidence and the final determination"). Remand is warranted.

4.    Hearing-Related Issues

The ALJ's RFC provided that Ford "needs to work in an environment with moderate or less noise." R. Vol. 1 [7] at 24. Ford says that limitation didn't go far enough because he experiences difficulty "in situations with more than one person talking." Pl. Mem. [8] at 10 (citing Ford's testimony at the hearing before the ALJ (R. Vol. 1 [7] at 46 ("[I]f it was in a situation where there was more than one person I was talking to, I had a difficult time hearing and concentrating."))). He also faults the ALJ for not including some limitation related to tinnitus he experiences "pretty constant[ly]." R. Vol. 1 [7] at 46.

Starting with the tinnitus, Ford points to no evidence in the record showing how that symptom limits him. As for his hearing loss, the record shows that in August 2016, Ford got hearing aids in both ears. At a hearing aid check one month later, he reported that he "[s]till ha[s] difficulty in noisy environments" because the "background noise is too loud and overwhelm[s] speech." R. Vol. 1 [7] at 340. So medical personnel "[r]eprogrammed" his hearing aids' "software to adjust speech in noise settings" and recommended "continu[ing] to monitor hearing

12

sensitivity yearly . . . or sooner if changes are noted." *Id.* When Ford's hearing aids were checked again a year later, in July 2017, he "reported stable hearing." *Id.* at 339. These records are substantial evidence supporting the ALJ's RFC as to necessary hearing-related limitations in Ford's ability to work.

B.    Analysis of Opinion Evidence

Title 20 C.F.R. § 404.1520c governs how the ALJ "consider[s]" and "articulate[s] [the] consideration of medical opinions and prior administrative medical findings." It describes a number of factors an ALJ should use in considering various medical opinions and explains that "[t]he factors of supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section) are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions or prior administrative medical findings to be." 20 C.F.R. § 404.1520c(b)(2). It explains those factors as follows:

> (1) *Supportability.* The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> (2) *Consistency.* The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

*Id.* § 404.1520c(c)(1)–(2). Ford says the ALJ's analysis failed to sufficiently explain how she considered the supportability and consistency factors for several medical opinions and prior administrative medical findings. The Court will address each of those medical sources in turn.

1.    State Agency Medical Consultants

As noted above, the ALJ considered the mental RFC assessments provided by medical consultants Drs. Koontz and Ronin. She found both "generally persuasive" but found Dr.

Koontz's opinion "more persuasive than Dr. Ronin's opinion." R. Vol. 1 [7] at 27. Ford faults

the ALJ for failing to "acknowledge or address" two specific sub-areas under the concentration,

persistence, and pace area of mental functioning and three sub-areas in the social interaction area

of mental functioning. Pl. Mem. [8] at 13. As to the former, the ALJ agreed with Dr. Koontz's

overall conclusion that Ford had a moderate limitation in the area of concentration, persistence,

and pace, and, as explained above, her RFC properly incorporated that limitation. The ALJ was

not required to separately address each individual conclusion but could "articulate how [sh]e

considered the medical opinions or prior administrative medical findings from that medical

source together in a single analysis." 20 C.F.R. § 404.1520c(b)(1). As for Dr. Koontz's

conclusions about Ford's limitation in social interaction, the Court has already concluded the

ALJ erred in not addressing a limitation in that area in her RFC. Ford can address Dr. Koontz's

conclusions on this point upon remand.

2.    Treating Neurologist Dr. Khoury

The ALJ found unpersuasive an October 26, 2022 letter from Ford's treating neurologist,

Dr. Michael Khoury, in which he opined that Ford's memory issues

> would impact his ability to remain on task for greater than 15% of
> the day. The memory issues may cause him to arrive late to work.
> We are awaiting results of formal neuropsych testing to better
> elucidate the etiologies of his symptoms. We have previously
> evaluated him also for headaches which may require time off from
> work periodically. He may also need to take breaks during the day
> (beyond the one [h]our time period) or leave work early or miss
> work for this.

R. Vol 2 [7-1] at 973.[7] While she incorrectly stated that Dr. Khoury "had not seen the claimant once since 2016," she appropriately concluded that the 2022 opinion "seems like an overestimation based on the objective medical findings documented in Exhibit 7F." R. Vol. 1 [7] at 27. And she noted that "the psychological and neuropsychological testing of record is inconsistent with a finding that [Ford] would be off task 85% of a workday." *Id.* Thus, the ALJ found the opinion both unsupported by and inconsistent with evidence in the record. Her analysis of the opinion satisfied her obligations under 20 C.F.R. § 404.1520c.[8]

   3.    Neuropsychologist Dr. Block

   Dr. Cady Block conducted a telehealth neuropsychological assessment on October 14, 2020. She found Ford's global functioning to be "in the impaired range" and noted that "points were lost for items related to orientation, attention, language, memory, and executive functioning." R. Vol. 2 [7-1] at 55. She found "statistically significant declines . . . in nearly all areas" from a 2016 neuropsychological assessment. *Id.* And she expressed "concern[] that [Ford]

---

[7] Ford also says the ALJ should have credited Dr. Khoury's March 20, 2017 observation that he "fe[lt it was] reasonable" for Ford to "request[] permanent disability . . . given traumatic brain injury, resultant cognitive impairment, and depression and anxiety." R. Vol. 1 [7] at 276. But the ALJ was tasked with "making the determination or decision about whether [Ford] me[]t the statutory definition of disability. . . . A statement by a medical source that [a claimant is] 'disabled' or 'unable to work' does not mean that [the ALJ] will determine that [the claimant is] disabled," and the ALJ need not "give any special significance to the source of an opinion on" such an issue. 20 C.F.R. § 404.1527(d)(1), (3).

[8] Her decision to assign little weight to the opinion is supported by substantial evidence. For example, in an October 2016 visit, Ford reported that he was interviewing for jobs in California and Atlanta. R. Vol. 1 [7] at 266. He "fe[lt] concentration and focus ha[d] improved but there remain[ed] periods with difficulty focusing which he associates with stress." *Id.* Then, following a September 2020 telehealth visit, Dr. Khoury noted that Ford "fe[lt] overall he [was] doing fine." Tr. Vol. 2 [7-1] at 105. At that time, Ford reported "some issues with concentration, some difficulty with balance and tinnitus." *Id.* He also said he had headaches two to three times a week, but that Excedrin "normally helps." *Id.* And he reported that his "anxiety and depression [were] largely well controlled." *Id.*

remains so symptomatic" for depression and anxiety despite "treatment including both antidepressant therapy and psychotherapy." *Id.*[9] But Dr. Block's report contained a significant caveat that her "ability to provide a valid characterization of [Ford's] cognitive profile [wa]s limited by behavioral and objective evidence of suboptimal task management." *Id.*; *accord id.* ("I again stress that interpretive caution is warranted here given suboptimal task engagement.").

Ford says "[t]he ALJ did not make a finding regarding the persuasiveness of Dr. Bl[o]ck's assessments." Pl. Mem. [8] at 15.[10] In response, Defendant says Dr. Block's assessment was not a "medical opinion" as defined in the regulations and therefore § 404.1520c does not apply. Title 20 C.F.R. § 404.1513(a) explains different categories of evidence the ALJ considers, including:

> (1) Objective medical evidence. Objective medical evidence is medical signs, laboratory findings, or both, as defined in § 404.1502(f).
>
> (2) Medical opinion. A medical opinion is a statement from a medical source about what you can still do despite your

---

[9] Dr. Block also opined that Ford's "psychiatric issues are absolutely sufficiently severe enough to limit his ability to effectively participate in employment." R. Vol. 2 [7-1] at 55. The ALJ was not required to accept this opinion on an "issue[] reserved to [her.]" 20 C.F.R. § 40431527(d)(3).

[10] Maybe not in so many words, but she did consider it:

> The claimant participated in another neuropsychological evaluat[ion] in October 2020. At that time, global cognitive functioning measured by the Montreal Cognitive Assessment (MoCA) corroborated a score of 19 of 30[;] this score indicates merely mild cognitive impairment. Moreover, this psychological assessment indicates that the evaluator's ability to provide a valid characterization of the claimant's cognitive profile was limited by behavioral and objective evidence of suboptimal task engagement. Hence, observations and objective measurements collected during testing suggested that the claimant was not putting for[th] his best efforts during the evaluation . . . .

R. Vol. 1 [7] at 26.

> impairment(s) and whether you have one or more impairment-related limitations or restrictions in the following abilities: . . .
>
>> (i) Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);
>>
>> (ii) Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;
>>
>> (iii) Your ability to perform other demands of work, such as seeing, hearing, or using other senses; and
>>
>> (iv) Your ability to adapt to environmental conditions, such as temperature extremes or fumes.
>
> (3) Other medical evidence. Other medical evidence is evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of your impairments, your medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis . . . .

Defendant says Dr. Block never states what Ford can do despite his impairments or describes impairment-related limitations or restrictions. In reply, Ford says that some "cognitive compensatory strategies" Dr. Block recommended to "enhanc[e] Mr. Ford's personal sense of effectiveness in daily living," R. Vol. 2 [7-1] at 56, are "specific work-related requirements," Pl. Reply [11] at 4. Even if the Court agreed that Dr. Block's recommended compensatory strategies constituted an opinion of restrictions on Ford's ability to meet the demands of work activities, she never describes what he can still do despite his impairments. *See Winston v. Berryhill*, 755 F. App'x 395, 403 (5th Cir. 2018) (noting that the precursor to § 404.1513(a)(2) uses the word "'and' to connect the definitional phrases" (citing 20 C.F.R. § 404.1527(a)(2))). The undersigned

agrees with Defendant that Dr. Block's assessment is not a medical opinion the ALJ was

required to assess under § 404.1520c.

>    4.    Psychologist Dr. Porter

Dr. Amina Porter conducted a psychological consultive examination of Ford on

November 1, 2021. Ford says Dr. Porter's conclusions are "consistent with the

neuropsychological findings as well as his testimony regarding his limitations." Pl. Mem. [8] at

16. The ALJ considered Dr. Porter's assessment:

> [Ford] was able to participate in another consultative psychological
> evaluation in November 2021. Although this evaluation occurred
> approximately one year after the claimant's date last insured
> expired, it demonstrates the stability of [Ford's] condition.
> Specifically, he exhibited slowed pace, but normal speech quality,
> thought organization, receptive language, and expressive language.
> [Ford] also exhibited full orientation, but [had] some issues with
> memory . . . .
>
> . . . .
>
> Even though Dr. Porter opined the claimant had no more than
> moderate limitations in understanding and memory, sustained
> concentration and persistence, social interaction, and adaptation,
> this opinion was provided almost one year after [Ford's] date last
> insured expired, and . . . Dr. Porter does not specify that her findings
> are reflective of [Ford's] functioning prior to the date last insured.
> Consequently, the undersigned finds this opinion less persuasive
> because it is well after the date last insured expired, which lessens
> its ability to provide an accurate evaluation of [Ford's] functioning
> during the relevant period.

R. Vol 1 [7] at 26–27. The ALJ thus explained why she did not find Dr. Porter's opinion overly

persuasive. Ford has not shown the ALJ's treatment of Dr. Porter's opinion was error.

>    5.    Recommendation for Audiology Evaluation

Finally, Ford notes that state agency medical consultant Dr. Muoneke recommended that

an audiologist be consulted given Ford's hearing loss. R. Vol. 1 [7] at 64. He says that the ALJ's

failure to consider this recommendation violated her duty to develop the record. *See Brock v.*

18

*Chater*, 84 F.3d 726, 728 (5th Cir. 1996) ("The ALJ owes a duty to a claimant to develop the record fully and fairly to ensure that his decision is an informed decision based on sufficient facts."). But a failure to develop the record requires reversal only if "the claimant was prejudiced thereby." *Id.* "Prejudice can be established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision." *Ripley v. Chater*, 67 F.3d 552, 557 n.22 (5th Cir. 1995). Ford has not shown prejudice from the ALJ's failure to order an audiologist consultation. The ALJ categorized Ford's hearing loss as a severe impairment and included an appropriate limitation related to it in her RFC. As explained above, substantial evidence supports these decisions. *See* R. Vol. 1 [7] at 339 ("[Ford] reported stable hearing" at a July 2017 "hearing re-evaluation prior to having hearing aid adjustments made . . . .").

C.     Assessment of Ford's Self-Described Limitations

Ford says the ALJ's assessment of his self-described limitations was flawed. *See* Pl. Mem. [8] at 17 n.12 (citing 20 C.F.R. § 404.1529, "which describes the ALJ's analysis of a claimant's self-described limitations as one that considers exclusively the consistency and supportability of those statements within the record").

> Pursuant to [20 C.F.R.] § 404.1529(c)(1), the [ALJ] must find whether the objective medical evidence shows that the claimant has a medically determinable impairment that could reasonably be expected to produce the claimant's complained-of symptoms . . . . If so, the adjudicator must then evaluate the intensity and persistence of the symptoms in order to determine how the symptoms limit the claimant's capacity for work. *Id.* If the claimant's symptoms are not substantiated by objective medical evidence, "the [ALJ] must consider all of the evidence in the case record, including any statements by the individual . . . concerning the individual's symptoms" and then "make a finding on the credibility of the individual's statements about symptoms and their functional effects." SSR 96-7p (July 3, 1996). "The ALJ must consider subjective evidence of [symptoms], . . . but it is within his discretion

> to determine the [symptoms'] disabling nature." *Wren v. Sullivan*, 925 F.2d 123, 128 (5th Cir. 1991) (per curiam) (internal citations omitted). Although an ALJ "is bound . . . to explain his reasons for rejecting a claimant's [subjective] complaints . . . ," he is not required to "follow formalistic rules in his articulation." *Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994).

*Herrera v. Comm'r of Soc. Sec.*, 406 F. App'x 899, 905 (5th Cir. 2010).

According to Ford, "his description of his daily activities is supported by the evidence, all of which can *only* support a finding that he is disabled and, more to the point, in no way supports the ALJ's finding that he can perform the demands of full-time work." Pl. Mem. [8] at 18. The ALJ considered Ford's self-described limitations and concluded:

> After careful consideration of the evidence, the undersigned finds that [Ford's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [his] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.
>
> As for [Ford's] statements about the intensity, persistence, and limiting effects of his symptoms, they are inconsistent. The longitudinal medical evidence of record does not fully support [Ford's] allegations of disability from the amended onset date of date of disability of May 10, 2016, through the date last insured of December 31, 2020. While the treatment notes show that [Ford] has some functional limitations due to impairments, his symptoms do not prevent him from performing some basic work activity at medium exertional levels.

R. Vol. 1 [7] at 24–25.

"The ALJ came to this conclusion after thorough consideration and discussion of the relevant medical evidence on record regarding [Ford's] impairments." *Herrera*, 406 F. App'x at 905. That evidence included treatment notes from Dr. Khoury that in September 2020 Ford "fe[lt] overall he [was] doing fine." Tr. Vol. 2 [7-1] at 105. "[T]he ALJ fully considered the evidence in the record in making [her] determination, and on review of the record [the

undersigned] find[s] that substantial evidence supports the ALJ's conclusions." *Herrera*, 406 F. App'x at 906.[11]

III.    Conclusion and Recommendation

The undersigned has considered all arguments. Any not specifically addressed would not have changed the outcome. For the reasons stated, the undersigned recommends that the Court reverse the ALJ's decision, enter judgment for Ford, and remand this case to the Commissioner under 42 U.S.C. § 405(g) for further administrative proceedings consistent with this Report and Recommendation.

IV.    Notice of Right to Object

In accordance with the rules and 28 U.S.C. § 636(b)(1), any party, within fourteen days after being served a copy of this report and recommendation, may serve and file written objections to the recommendations, with a copy to the United States District Judge, the Magistrate Judge, and the opposing party. The District Judge at the time may accept, reject, or modify, in whole or part, the undersigned's recommendations, or may receive further evidence or recommit the matter to the undersigned with instructions. The parties are hereby notified that

---

[11] Ford faults the ALJ for not "acknowledg[ing] or discuss[ing] the fact that he has an exemplary work history of 30+ years of uninterrupted work activity prior to his onset date" in "assessing the consistency of his complaint and described limitations." Pl. Mem. [8] at 19; *see* 20 C.F.R. § 404.1529(c)(3) (stating that ALJ "will consider all of the evidence presented, including information about your prior work record" "in reaching a conclusion as to whether you are disabled"). He cites *Roberson v. Colvin*, where the magistrate judge "agree[d] that the solid 30-year work history described in plaintiff's brief should have been a consideration in assessing credibility." No. 2:13-CV-197, 2015 WL 1408925, at *7 (N.D. Tex. Mar. 27, 2015). But the *Roberson* court ultimately concluded that "while it would have been better for the ALJ to acknowledge plaintiff's 30-year consistent work history, the failure to reference such in his findings does not mean he was not aware of the history." *Id.* at *8. The undersigned agrees with the *Roberson* court's approach; the ALJ reached her conclusion about Ford's self-described limitations "[a]fter careful consideration of the evidence." R. Vol. 1 [7] at 24. Her failure to specifically acknowledge Ford's 30+ year work history does not mean she disregarded it.

failure to file written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation within fourteen days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions accepted by the district court for which there is no objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *Alexander v. Verizon Wireless Services, L.L.C.*, 875 F.3d 243, 248 (5th Cir. 2017); *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).

Respectfully submitted, this the 24th day of June, 2024.

s/ *Andrew S. Harris*
UNITED STATES MAGISTRATE JUDGE